May it please the Court. I'm Eric Little, Counsel for AgraKey and John Reitzman. Under Idaho law, an insurer's defense duty is very broad. It requires an insurer to defend where there is a potential for coverage. The potential for coverage need only be arguable, and facts and allegations extrinsic to the complaint can trigger the insurer's defense duty. Now, we contend that the underlying biomagic action, which was an arbitration, triggered mid-continence defense duty under the coverage for disparagement and for use of another's advertising idea in your advertisement. Let's start with the second one. What advertising idea was used? There were three advertising ideas that were used. They were university studies, they were consumer recommendations, customer recommendations, customer reports, and field tests. And these are very important because they're on my client's website. And the whole purpose of the website is to induce farmers to buy Unlock. And Unlock is this treatment that farmers put on their field so that they use less water. It's a very, very valuable treatment. So on Agri-Key's website is a whole bunch of material used to sell this Unlock product. And one of the ways they sell it are these university studies and the customer recommendations and these field trials. And those are very, very persuasive to farmers. Well, surely you're not saying that those generically are an advertising idea that's been swiped here. I'm still a little unsure as to what exactly it is that is alleged to have been swiped from whom. Well, this doesn't require swiping. The coverage here is use of another's advertising idea in Agri-Key's advertisement. So that is a fundamental distinction between the 1998 ISO form that we're talking about here, maybe 2006, but it's the same form, and the 86 ISO form, which is what all those cases like Frog Switch are about. This policy doesn't require misappropriation. It doesn't require swiping. It just requires you to use it. Or I should be more specific. It requires the policyholder in this case, Agri-Key. What's the advertising idea that was used? The idea is the use of these reports that show that Unlock is an effective way of holding water into the land. So the idea is that Unlock is effective and the underlying proprietary product is effective. Okay. How do you show that effect? What are good ideas for showing a product is effective? University studies. Okay. Well, it's like saying product endorsement. Well, product endorsement is nobody's advertising idea. I mean, that's as generic as it comes. So I'm still adrift as to what it is that's supposed to have been used. Whose idea are we talking about here? It only requires that it be use of another's. There's got to be causation. I mean, I think what we're getting to is that there's not some suit because you used university data, correct? May I address that? I think that's part of what Biomagic is upset about, is that we use the university data that Biomagic intends only applies to their products. Okay. But the another is not the university. It's got to be Biomagic. Sure. It can be the university. Why? It says use of another's advertising idea. Okay. It doesn't say use of the plaintiff's. Okay. It says use of another's advertising idea in your advertisement. And that's an important distinction also. Okay. Because the wrong alleged here, and I think it's clear that Biomagic contends that we're wrongly using these advertisements. Okay. That we're wrongly using these studies. Okay. But the coverage is for use of another's advertising idea. Okay. So it can be the university. Where does Biomagic make that allegation? If you'll give me a moment, Your Honor. Your Honor, in the Gary Mobley declaration, in paragraph 8, he establishes the advertising. On approximately March 3, 2010, I went to the website for Agri-Key at the web address www.agri-key.com. Okay. And then. But what. Yes, I'm sorry. And his complaint is that respondents are continuing to manufacture and sell the licensed product. I don't see anything there about advertising. You're selling the product. That's the beef, as I read everything. He's just saying I confirm they're selling the product. But that's just saying is the issue here is the potential for coverage. He's also saying other things. Okay. Where? Yes, Your Honor. I'm sorry. I'm trying to answer both questions at the same time. I understand that. But my original question was where, and you pointed me to something that talks about sell, not about advertising. Okay. And I apologize, Your Honor. I'm nervous. Okay. That's all right. On the right side of the home page, on the paragraph 10 of the same declaration, on the right side of the home page, B1, are several testimonials from Agri-Key customers indicating that they have used Unlock with Success for two or three years, e.g., for example, KT of Stevensville, Texas, two years, JBV of Jerome, Idaho, for three years, RG of Eden, Idaho, for three years. Two to three years ago is 2007 to 2008, when respondents were manufacturing and selling the licensed product under the name Unlock. And then also in paragraph 12, Your Honors, pages B5 through B7 are copies of a portion of the research tab on Agri-Key's website. Pages B5 and B6 is a portion of the research tab on Agri-Key's website entitled University Research. These pages state that Unlock has been the subject of successful university studies at Penn State University, completed in June 2008, Fresno State University, completed March 2008, and Washington State University, completed in March 2008. Again, all of these studies were completed during the time that respondents were manufacturing and selling the licensed product. And then, I'm sorry, Your Honor. So I'm still reading that to say I'm showing you what they're getting at, I think, that Mobley Declaration is. This is the time frame. This is the time frame of what was happening with Unlock here. This is what they're doing now. It's the same product. Ergo, they're selling our product improperly. So that's their claim, but you're saying that they're doing it, okay? Use of another's advertising idea in your advertisement. Remember, this isn't a specific tort, Your Honor. Insurance companies, especially when you're dealing with offense-based coverage, provide coverage for types of wrongful conduct. And this is a type of wrongful conduct. So, of course, they're not providing coverage for the sole instance where you sell somebody else's product. But they do provide coverage when it arises out of your business, when the sales arise out of your business, and you use another's advertising idea in your advertisement to make those sales. And that's what our contention is here. But is that an advertisement? An advertisement is a notice that's published about your goods, products, or services for the purposes of attracting customers. There's our wrong. There's the wrong in it. Because we're contending it's about our goods and services. And Biomagic contends it's about their goods and services. There's the wrong. But if you have a report from a university, is that an advertisement? If you throw it on your website as a reason to get people to buy your product, it is. Why else does anybody put anything on their website? They're big advertisements. The only things, I think, that are arguably not an advertisement on a website are going to be things like how to contact us. And there is case law out there to that effect that a website, the whole purpose of a website is an advertisement. It's a billboard. It's a little billboard that we look on our iPads and our computers all the time. It's great. So, yes, I think that there can be no question that these reports, the university reports and such, are advertisements. Now, it might be different if we're dealing with a closed website where universities are sharing reports between each other and they're not selling anything. But here, Agri-Key is trying to sell something. They're trying to sell this unlock to farmers so that they only have to use less water on their fields. All right. If I may talk about disparagement, is that okay? Your Honor, we believe that biomagic action alleges potentially covered disparagement pursuant to its claims for unfair competition and intentionally interfering with Biomagic's prospective business relationships. Now, Biomagic did contend that Agri-Key engaged in this allegedly wrongful conduct by representing on Agri-Key's website and elsewhere that Agri-Key owns the proprietary product. Isn't the requirement exclusive ownership? Well, I'm not sure the requirement is exclusive ownership, but I think that works on the facts of this case. I think there are cases out there, Your Honor, where you have a small group of people that do the same thing, that there can be disparagement also. But here you have two companies that do the same thing. Biomagic has their proprietary product and Agri-Key has its proprietary product. So if Agri-Key is representing on its website, which it was, that this is our proprietary product, the reasonable inference is that Biomagic doesn't have the proprietary product. That alone, I agree with, Your Honor, doesn't get us to disparagement. But when you add in customer confusion, which is expressly alleged, when you add customer confusion and reputational damage, which is expressly alleged, and goodwill damage, then you have disparagement. And again, I want to take Your Honors back to the standard for a duty to defend under Idaho law, which is a potential for coverage and that the coverage has to be arguable. And I think I've established today that under both the disparagement coverage and under the use of another's advertising idea in your advertisement coverage, that the coverage is, there's potential coverage there. And if not potential coverage, the coverage is arguable. Did the Arbitration Award resolve any such claim? No. No, they won on the bigger claims. So, I mean, that's part of my real trouble here. I mean, it seems to me that you're constructing claims that somebody might possibly have brought, but not the claims that were actually brought. We're not. And I'll tell you why, Your Honor. Because the scope of the claims that were actually brought, okay, were those that were outlined in the motion for interim measures. The problem with arbitration, Your Honor, is it's not even like going to federal court where you have notice of pleading, okay? When you go to federal court and you have notice of pleading, you have a pretty good idea of what you're going up against. Here, the only indications we had of torts, okay, were the unfair competition tort claimed and the interference with prospective business advantage, okay? It wasn't until the motion for interim measures that we had any specific knowledge of the facts that these were based on, the problems with, you know, us saying that the product was proprietary. The problems with the university subsidies, et cetera, et cetera. Now, so that is what delineates the scope of the claims, okay? And under Idaho law, again, you get to consider, the insurance company must consider facts extrinsic to the complaint in triggering the defense duty. Now, Your Honors, I understand that you're all been trial attorneys also, okay? And, you know, when you start your case, you have a lot in there, okay? But when you get to the trial, you narrow it down to your best arguments. I agree. I think that Biomagic's arguments here were not good, okay? They were not the strongest arguments. So they narrowed down their claims, okay? And at trial, they prevailed, got the same damages on other theories of recovery. I have 52 seconds. I'm going to save your time. Thanks, please. All right. Good morning. May it please the Court, Counsel, my name is Richard Stubbs, and I will present the argument this morning for Mid-Continent Casualty Company. Mid-Continent asks that this Court affirm the opinion of the District Court denying Agri-Key's motion for summary judgment and granting summary judgment to Mid-Continent. Agri-Key purchased a commercial general liability policy from Mid-Continent. It did not purchase insurance for the risk for which it seeks defense in this case. Biomagic, as the Court has recognized in oral argument today, alleged that Agri-Key stopped paying royalties for Unlocked and sold Unlocked to farmers and non-agriculture businesses. And the crux of Biomagic's claim was a continued sale of this case. Biomagic did not allege that Agri-Key made any statements whatsoever concerning Biomagic. There was no disparagement alleged. There was no advertising injury alleged. There are also multiple exclusions that apply in the policy. We also assert as an alternative basis for affirming the District Court that the arbitration demand was not a suit as defined in the policy because Agri-Key did not agree to the arbitration. And this requires following the issuance of the license agreement and then the license transfer agreement and the fact that Agri-Key didn't exist at the time. We also contend that Agri-Key was impermissibly late tendering the arbitration to Mid-Continent and this caused prejudice to Mid-Continent because of the fact that Agri-Key actually conducted mediation and failed to settle the case even though they were within $50,000 apart. Although we agree with the District Court's conclusion that there is no duty to defend, we disagree with the District Court's conclusion that the court goes beyond the complaint or the arbitration demand that was filed in this case. We respectfully disagree that Idaho allows the court to go beyond the arbitration demand and look at the motion for interim measures. Hearst v. St. Paul, which was cited in the District Court's opinion, is not an Idaho Supreme Court case. That is an intermediate appellate court case in Idaho and there are numerous opinions from the Idaho Supreme Court after that, reaffirming that an insurer is to look at the allegations of the complaint only. I agree with Mr. Little's assertion that the insurer is to defend if there's a potential for coverage. I agree with Mr. Little's assertion that coverage is arguable. However, in this case, first the District Court was correct that there was no potential and it was not arguable in this case. But beyond that, the court should not go beyond the four corners of the arbitration demand in this case. Could I ask one question that he focused on, and that is under the advertising injury section of the policy, it talks about use of another's advertising ideas. And when I first read that, I think I inferred, like the District Court did, that they meant biomagics, but it doesn't say that. So it says another, which seems to open the possibility that it could be broader. Would you address that point? Certainly. MidCon contends that biomagic did not allege an advertising injury and that this case is like the construction management systems versus insurance company case. In that case, the Idaho Supreme Court found that it was not an advertising injury to build homes based on the plaintiff's copyrighted architectural plans and, in fact, have realtors promote those homes based on those copyrighted architectural plans. Biomagic did not allege that Agri-Key used its advertising ideas in its advertising. Statements concerning customer testimonials, university research, and field trials were used to demonstrate that Agri-Key was selling the same product Dutch Brothers had been selling under the licensing agreement. Okay, but I hear that, but their argument is, well, really what they were doing on the web was taking information, which is another person's ideas, and they're using that as part of their promotion. And the other person isn't, well, I don't want to say you, but biomagic, since you're the insurance company, but biomagic. And so that there's a distinction in the language of this contract in contrast to potential other contracts, which would be that you're using the advertising of the person who's suing you. Right. And the district court correctly found that was a distinction without a difference. There is also the very important point here. Why? Why is it a distinction without a difference? Because the wording ends up being the same thing. The mid-continent policy says it covers a personal and advertising injury arising out of your business and defines a personal and advertising injury as an injury arising out of the use of another's advertising idea. That's not what happened here. But beyond that, if I'm answering your question correctly. Well, I mean, Kevin really precisely answered what I thought his argument was, that the other person's advertising idea is not biomagic. They're not saying that they pirated biomagic, but they used ideas, information, from a third-party source, put that on a website, that became advertising. And it wasn't biomagic's idea. And it's not biomagic's. They say, no, it doesn't need to be biomagic. That's really the, you guys are, that's your, one of the key differences. Right. And we dispute that. But the other thing. Wait, wait, wait. Let me see if I, try it this way. Are you saying that the fact that it says bio, it doesn't say biomagic or doesn't say claimant, it says another's opening the door to the possibility the advertising idea isn't the claimant's, could be somebody else's. Are you saying that doesn't apply here because biomagic doesn't have the right to bring a cause of action against anybody for use of John Doe's advertising idea, that you're concerned only with a claim that biomagic can bring? I think that's the case, Your Honor, if I follow the court. And I, too, like Mr. Little, am nervous here. But another point that I'm trying to bring up here, and I don't want to, and I want to answer the court's questions, and I'm trying to, is, and as Judge Lodge very correctly found, there was no allegation by biomagic that there was injury caused by any, if these were advertisements, if they caused any injury. If the court reads the declaration of Mr. Mobley, as Judge Lodge correctly found, those assertions were made to prove that it was biomagic's product that Agri-Key Solutions continued to sell. It was not used to show that they were injured by these statements that were made. Yeah, he said there's nothing to tie it up. There's nothing to tie it up, and that puts this squarely in line with the construction management systems case. And, therefore, we contend there was no advertising injury here. Also, there was no disparagement of biomagic's product committed by Agri-Key Solutions or alleged, potentially alleged to be committed by biomagic. Midcontinent contends that multiple exclusions apply under this policy, and as the County of Boise case of the Idaho Supreme Court said, exclusions can eliminate the duty to defend under Idaho law. We have outlined that in our brief. I'd like to address the additional argument, the alternative basis that the biomagic arbitration is not a covered suit. To be a covered suit, the insured must be required to submit to an arbitration, or Midcontinent must consent. Midcontinent did not consent to this arbitration. The arbitration agreement was in the original license agreement between Biomagic and Dutch Brothers. The license transfer agreement, Dutch Brothers then transferred the license to John Reitsma, but that license transfer agreement did not carry forth the terms of the original agreement. It stated that there was a new agreement that was to be entered into. However, in his deposition testimony, Mr. Reitsma testified that they never entered into that substitute agreement. Under Idaho law, if there are no material terms agreed to, an agreement to agree is not a contract. Also, Agri-Key was not a party to the license or the license transfer agreement because the Agri-Key Solutions LLC did not exist at that time. Mr. Reitsma formed it later. Agri-Key Solutions is the named insured in this case. Mr. Reitsma is not a named insured. He is insured in his status as a member and manager of Agri-Key Solutions, but only with respect to his conduct of Agri-Key's business or as to his duties as a manager for Agri-Key Solutions. And since the license transfer agreement was executed before Agri-Key Solutions ever came into existence, it is Mid-Continent's position that Mr. Reitsma's duties under the license transfer agreement are not Agri-Key's business or part of his management duties. So that's an alternative basis for affirming the district court. Finally, we contend that the very late notice that occurred in this case, the very late tender of the defense, also supports affirming the district court. As the court recognizes, Idaho does not require a showing of prejudice by the insurer. The Viani case states for that. However, there is clear evidence of prejudices caused to Mid-Continent by the late tender. For example, we found out through discovery and the deposition of Mr. Sklavos that Agri-Key participated in a mediation prior to the tender and came within $50,000 of settling the case. If Mid-Continent had been made aware of the mediation, it is possible Mid-Continent would have elected to contribute the $50,000 to settle the case and get it over. Another problem is there were multiple attorneys who represented Agri-Key Solutions throughout this entire arbitration process, leading to a lack of continuity of defense. I'd also point out that despite the multiple attorneys who represented Agri-Key Solutions through this lengthy process, no one thought to tender defense of this because all of them thought correctly that there was no duty to defend under this type of policy. If there are no further questions, I will concede the rest of my time. Thank you. Thank you. I think you have just under a minute to make a final point. Thank you. If I may, Your Honor, most of the stuff, the last three arguments he made, we dealt with in our reply brief, and I think we responded to them there. Construction management, his discussion of causation and construction management, that's an 86 ISO, not a 98 ISO or 2006 ISO. We're dealing with totally different policy forms. Your Honors, we're very interested in this idea of use of another's. He has an interpretation, I have an interpretation, and I get the feeling that that's ambiguity. What can Biomagic claim? Biomagic doesn't have the right to claim injury based on use of John Doe's advertising idea. Whose advertising idea is at issue here? They certainly do have the right to claim injury based on the use of John Doe's advertisement when, as here, it results in customer confusion and damages to Biomagic. That's their theory. And the paragraph that ties all that together, it's a conclusive paragraph that all these acts prior to this, including marketing and sales, result in customer confusion. That's paragraph 41 of the Mosley Declaration. But to get back to the use of another's idea, the question of whether it has to be Biomagic's idea or somebody else's idea, when there's two interpretations of the policy and one runs reasonable, you follow that one. But if there's two interpretations and they're both reasonable, and for the sake of argument, maybe Midcontinence is reasonable. I don't think it is. But even if it is reasonable, the court's obligation is to interpret the policy in favor of insurance coverage, in favor of the policyholder. Were there any questions? No further questions. Thank you. Thank you, Your Honor. I'd like to thank both counsel for your argument, for coming to the Ninth Circuit this morning. The case of Agerke Solutions v. Midcontinence is submitted.
judges: Hawkins, McKeown, Clifton